FLEM E. AND LYDIA V. McMILLAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McMillan v. Commissioner
Docket No. 2287-87
United States Tax Court
T.C. Memo 1989-441; 1989 Tax Ct. Memo LEXIS 441; 57 T.C.M. (CCH) 1364; T.C.M. (RIA) 89441; August 21, 1989
Flem E. McMillan, pro se. James S. Yan, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency of $ 2,958.00 in petitioners' joint Federal income tax for the calendar year 1983. The issues for decision are: (1) Whether petitioner Flem E. McMillan's activity as a musician in 1983 was engaged in for profit, and, if so, whether petitioners have substantiated Schedule C expenses claimed on their 1983 return; and (2) whether petitioners are entitled to four dependency exemptions claimed on their 1983 return. FINDINGS OF FACT Some of the facts have been stipulated and are *444 so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Los Angeles, California. During 1983, petitioner Lydia V. McMillan (Mrs. McMillan) was employed full-time as a nurse. From August through December 1983, petitioner Flem E. McMillan (Mr. McMillan) was employed full-time as a computer operator. Mr. McMillan is also a musician. Prior to 1983, he had been a member of the Local 425 Musicians' Association in Louisiana. Mr. McMillan was never a member of a musicians' union in California. From 1974 through 1980, he was able to support himself by performing with a band at night clubs and by working temporarily at other jobs. In 1981, Mr. McMillan moved to Los Angeles to attend the Guitar Institute of Technology in Hollywood, California. He graduated in September 1982, having satisfactorily completed the prescribed training as a "Professional Guitar Player." Mr. McMillan made a tape of his band's music (known in the music industry as a "demo") and sent it to a major record company in July 1982. In August 1982, the demo was rejected by the record company, with *445 the explanation that the market for southern rock music had diminished and that the band's vocals needed to be stronger. Since that time, Mr. McMillan has contacted some other record companies without success. Mr. McMillan did not make use of pictures or other promotional materials in order to market his music in 1983. In June 1983, Mr. McMillan performed with a band for a single evening at a night club in Bastrop, Louisiana. Petitioners reported gross receipts of $ 50 on Schedule C of their 1983 return. Petitioners also claimed the following expenses on the Schedule C, of which $ 9,782.15 was disallowed by respondent: Description Amount Car and truck expenses
$ 660.00 Depreciation and Section 179 deduction
8,200.55 Dues and publications
18.95 Taxes
235.40 Travel and entertainment
445.00 Albums
42.15 Strings and effects
230.10 Total deductions
$ 9,832.15 We find that petitioners have substantiated $ 178.94 in sales taxes, out of the $ 235.40 claimed on their Schedule C. Depreciation of $ 3,200.55 was claimed on an automobile as 3-year ACRS property placed in service in 1982, with a cost or other basis of $ 8,422.50. *446 The section 179 deduction is made up of the following: Description Amount Gibson Les Paul $ 1,500.00 Fender Stratocaster 696.00 Fender Telecaster 875.00 Martin D-41 1,250.00 Marshall (cost: $ 935.00) 679.00 Total section 179 deduction $ 5,000.00 Petitioners claimed four dependency exemptions on their 1983 return. The dependents claimed were four of Mrs. McMillan's siblings, the eldest of which was about 18 years old as of the time of trial. They lived in a home owned by Mrs. McMillan in the Philippines. The claimed dependents were Filipino and were not citizens of the United States. OPINION Activity as a Musician
The first issue for decision is whether Mr. McMillan's activity as a musician in 1983 was engaged in for profit. Petitioners bear the burden of proof as to all issues before us. Rule 142(a). [1]
Section 183(a) generally disallows all deductions attributable to an individual's activity *447 if it is "not engaged in for profit." However, section 183(b)(1) allows deductions related to the activity that are allowable regardless of whether the activity is engaged in for profit (e.g., interest and State and local taxes). In addition, section 183(b)(2) allows those deductions which would have been allowable had the activity been engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b)(1). Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are permitted under those sections if a taxpayer engages in an activity with the "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). A taxpayer need not establish that he or she had a reasonable expectation of profit, but in making our decision we give greater weight to objective factors than to a taxpayer's statements of intent. *448 Dreicer v. Commissioner, supra at 644-645; sec. 1.183-2(a), Income Tax Regs. The existence of the requisite profit objective is a question of fact. Benz v. Commissioner, 63 T.C. 375, 382 (1974); sec. 1.183-2(b), Income Tax Regs.
The regulations contain a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. No single factor is conclusive, and since the nine factors are nonexclusive, decision is not reached by merely counting the factors *449 that support each party's position. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.
Having considered these factors within the context of the facts presented by the case at bar, we hold that petitioners have failed to prove that they possessed the requisite profit objective in connection with Mr. McMillan's activity as a musician in 1983. Accordingly, section 183(b) applies to limit the deductions claimed by petitioners. Petitioners have substantiated the payment of $ 178.94 in sales taxes out of the $ 235.40 claimed on Schedule C to their 1983 return. A taxpayer is allowed an itemized deduction for State and local general sales taxes paid or accrued during a taxable year. Sec. 164(a)(4). [2] Petitioners reported itemized deductions on Schedule A of their 1983 return. Despite the fact that Mr. McMillan's music activity was not engaged in for profit, petitioners are entitled to deduct the $ 178.94 in sales taxes as an itemized deduction on Schedule A. See sec. 183(b)(1). *450 Mr. McMillan's music activity included both the performance of music and attempts to contract with a record company. As to the performance aspect, most compelling to us in making our decision is the fact that Mr. McMillan performed for only a single evening during 1983, realizing a mere $ 50 in gross receipts. The absence of other engagements in 1983 is both conspicuous and telling. While it is clear that Mr. McMillan is committed to music and that he derives great pleasure from playing the guitar, he has failed to show that his objective was to make a profit by performing. Mr. McMillan's attempts to contract with a record company are somewhat distinct from the performance aspect of his music activity. The financial rewards for those who achieve success in the music industry are great. [3] Consequently, the fact that a taxpayer incurs losses in an area as speculative, but potentially lucrative, as the music industry does not foreclose the possibility that such taxpayer entered into the activity for profit. The regulations provide that: "an opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity *451 is engaged in for profit even though losses or only occasional small profits are actually generated." Sec. 1.183-2(b)(7), Income Tax Regs.
We are convinced that Mr. McMillan wants to eventually have his music recorded, but he has failed to prove that in 1983 he pursued that desire with the objective of making a profit. As of trial, Mr. McMillan had yet to receive a contract to record his music with any record company. In 1983, he made no use of pictures or other promotional materials to market his music to the record companies, and he did not conduct this activity in a businesslike manner calculated to earn a profit. While we believe Mr. McMillan had contacted record companies regarding his music, we are not convinced that he pursued a record contract in 1983 with the vigor commensurate with a profit-making activity. Dependency Exemptions
The second and final issue for decision is whether petitioners are entitled to four dependency exemptions claimed on their 1983 return. In computing taxable income, an individual is allowed a deduction for the exemptions specified in section 151, including an exemption *452 for dependents of the taxpayer. Section 152(b)(3),however, provides as follows: The term "dependent" does not include any individual who is not a citizen or national of the United States unless such individual is a resident of the United States or of a country contiguous to the United States. The preceding sentence shall not exclude from the definition of "dependent" any child of the taxpayer legally adopted by him, if, for the taxable year of the taxpayer, the child has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, and if the taxpayer is a citizen or national of the United States. The dependents claimed were four of Mrs. McMillan's siblings who lived in a home owned by Mrs. McMillan in the Philippines. Further, the claimed dependents were Filipino and were not citizens of the United States. Accordingly, pursuant to section 152(b)(3), Mrs. McMillan's four siblings do not qualify as dependents. We therefore hold for respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for 1983.↩
2. The Tax Reform Act of 1986, Pub. L. 99-514, section 134, 100 Stat. 2085, 2116, repealed the deduction for State and local sales taxes, effective for taxable years beginning after December 31, 1986.↩
3. Wagner v. Commissioner, T.C. Memo. 1983-606↩.